O'NEILL v. ANCIENT ORDER OF GLEANERS.

1. INSURANCE—FRAUD OR OPPRESSION—MUTUAL BENEFIT POLICY—EVIDENCE—REMEDY WITHIN ORDER.

Where the beneficiary, in a mutual benefit policy, filed her petition for a hearing on her claim, which was granted by the society issuing the policy, and at the hearing her attorney submitted no proofs relative to the age of decedent, which the insurer had questioned, but submitted merely an offer of compromise which the insuring body rejected, and it appeared that the attorney for the beneficiary had made no attempt to push the settlement of the controversy after receiving notice that the claim would be considered, and that he filed no complaint relative to its failure to act, but suffered the matter to stand nearly two years after the filing of the petition, when he wrote requesting defendant order to fix a date for hearing, presenting no proofs, as requested by the order at that time, and taking no appeal from

the final rejection of the claim, no sufficient excuse on
the ground of fraudulent or oppressive action was made
out and the defense, available under plaintiff's policy
that the remedies within the order had not been ex-
hausted, was conclusive against the claim.

2. SAME.

And where the administrator of such beneficiary took no
steps after her death to obtain a hearing before the
supreme council of the order, he was not entitled to re-
sort to the courts.

Error to St. Clair; Tappan, J. Submitted January
27, 1913. (Docket No. 1.) Decided September 30,
1913. Rehearing denied January 5, 1914.

Assumpsit by Larry E. O'Neill, administrator of the
estate of Julia Breen, deceased, against the Ancient
Order of Gleaners upon a benefit certificate. Judg-
ment for plaintiff. Defendant brings error. Re-
versed; new trial refused.

*Charles S. Hampton* and *James A. Muir,* for ap-
pellant.

*C. L. Benedict* and *William R. Walsh,* for appellee.

McALVAY, J. This is an action brought by the
representative of Julia Breen, deceased, who was
named as beneficiary in a certain benefit certificate
for $1,000 issued by the defendant order to her hus-
band, Maurice Breen, at the time he became a mem-
ber of said order, and dated June 11, 1900. The trial
resulted in a judgment for the amount claimed due.
Defendant has removed the case to this court for re-
view.

The following are the material facts in the case:
Maurice Breen, a farmer living in St. Clair county,
Mich., on May 14, 1900, made the usual application in
writing for membership in defendant order, among
other things stating and warranting, in answer to

questions in said application, that his birthday was July 24, 1850, and also that any untrue or fraudulent answer "in regard to my * * * age, * * * or neglect to pay assessments, * * * shall vitiate my benefit certificate and forfeit all payments made thereon."

The foregoing benefit certificate was issued to him upon this application in the amount of $1,000, payable to his wife, Julia Breen, in case of his death while a member in good standing, and a further agreement to loan the member $20 per month under certain conditions in case of disability. The laws of this order provided that no person above the age of 50 years could become a member.

In October, 1904, upon the occasion of a visit to the local arbor at Emmett, Mich., of which Maurice Breen was a member, by the chairman of the supreme council of the governing body of the order, the question was brought up regarding the age of Maurice Breen and his right to membership. Inquiry was made by this officer of defendant upon this subject and an investigation was started. Maurice Breen was notified by a letter from the supreme secretary of the order to furnish evidence to substantiate his application as to his age, as follows:

"October 28, 1904.

"MAURICE BREEN,
    "Emmett, Michigan.
"*Companion:*

"I am directed by the supreme council to inform you that it will be necessary for you. to forward to this office information in the shape of an affidavit or signed statement from those who can furnish such evidence that will substantiate the statement regarding your age as given in your application for membership in this organization. You will understand that in case of your death, absolute information as to the date of your birth must be had, and if an error is found, of course your certificate is invalidated, therefore for your protection, you should see that this

affidavit is furnished at once.   Kindly give this matter your prompt attention as evidence should be in my hands before the next meeting of the supreme council.                Fraternally yours,

"G. H. SLOCUM."

He neglected to do anything in regard to the matter and the local secretary was instructed by the supreme council not to receive any further dues or assessments from him.   He received this notice in May, 1905, and continued to tender his dues after that date.   He died December 26, 1905.

In August, 1906, the beneficiary, Julia Breen, filed her petition with the defendant order for a hearing of her claim under such beneficiary certificate.   Before this time she had requested blanks to fill out formal proofs of death and on July 13, 1906, received a communication from the supreme secretary, refusing to furnish such blanks on the ground that Maurice Breen was not a member in good standing at the time of his death.   A hearing was granted on this claim September 11, 1908, at which the attorney for Julia Breen was present.   He offered and submitted no proofs to sustain the claim but submitted for consideration a proposition for settlement, which was not accepted.   Defendant claims that all of the proofs in its possession relative to the age of Maurice Breen at the time he became a member were communicated to this attorney.   Julia Breen was not then living, having died April 4, 1908.   Letters of administration of the estate of Julia Breen were granted plaintiff August 26, 1910.   The declaration in this case was filed September 10, 1910.   The facts relative to this matter which occurred between September 11, 1908, and the commencement of this suit which are shown by the record will, as far as may be necessary, be stated in connection with the discussion upon that proposition.

There are several very important questions raised

by the appellant upon the errors assigned. The principal contention of appellant in this case is that plaintiff did not exhaust his remedy in the forum established by defendant order in its constitution as required of its members, and that no action can be maintained in the courts unless the claimant has been fraudulently deprived of his rights under the laws of the order. The facts established by the record relative to the matter of the petition of Julia Breen have already been stated. The petition was accompanied by a letter dated August 20, 1906, which inclosed the petition and asked for notice, when the matter would come up for hearing.

On August 23d defendant acknowledged receipt of the petition and letter of August 20th, stating that the meeting would probably occur in September or October and that notice would be given. With the exception of a letter inquiring about the date of a hearing written according to its date in the record in August, 1906, the claimant took no further steps in the matter until September 20, 1907, more than a year later, when her attorney wrote the attorney of defendant order relative to the claim, saying that he would like to take it up and get a settlement and asked when they would have a meeting. After that date and before the date fixed for hearing, several letters passed between the attorneys of the parties of like import, relative to the time a date of hearing would be fixed.

As already stated in the recital of facts, the meeting of the supreme council was held September 11, 1908, at which time claimant's attorney was in attendance. He put in no proof but submitted a proposition of settlement and left the meeting. The minutes of this meeting show that he claimed to appear "for the representatives of both said member and said beneficiary, both deceased." After the meeting the attorney for Julia Breen wrote two letters, on

December 8, 1908, and January 26, 1909, to the attorney for defendant order, asking for information, and on January 26th he also wrote a letter to the general secretary of the order. This letter was answered February 3, 1909, as follows:

"Detroit, Michigan, Feb. 3, 1909.
"Joseph Walsh, Attorney,
  "Port Huron, Michigan.
*"Dear Sir:* Your favor of recent date at hand and in reply will say that I have intended to write you in regard to the Breen case, and think I promised Mr. Wixon that I would do so but the matter entirely escaped my attention.

"At a meeting of the supreme council held after Mr. Wixon consulted you, I found that the members of the supreme council were divided as to the instructions given Mr. Wixon. There were only two members of the supreme council present at that meeting, and at the last meeting held on the 21st there was a full board present and the matter was again brought up for consideration. All members of the board agreed that Mr. Wixon was instructed to talk with you with reference to this matter and find out just what position you were going to take with reference to this case, and he was to make his report to me. Mr. Wixon, on the other hand, understood that he was to consult with you with reference to an adjustment of the case.

"Now, Mr. Walsh, I can assure you that we are anxious to do what is right in connection with all cases of this kind, but personally I feel that this ought to properly come before the delegates at the biennial meeting and not be adjusted by the board. We were perfectly sincere in our efforts to get Mr. Breen, during his lifetime, to furnish us evidence as to his age, and having taken action that we considered fair and legitimate, it does seem wrong for us to now when both the member and his beneficiary are dead and gone, to adjust this matter and thereby acknowledge that we did wrong while this member was alive. I am sure that the board would be willing to allow you to present the matter to the delegates at the coming biennial meeting, and I would suggest that you pre-

sent the matter to them asking them to take this up, first presenting it to the supreme council and then asking to come before the delegates at a biennial meeting assembled. However, should you like to appear before the board and present this matter again when you have plenty of time, and go thoroughly over the matter, I should be glad to advise you of the date of their meeting. You will remember that when you were here there was a ball game on and neither yourself nor Mr. Wixon had time to go thoroughly into the details of the case.

"Awaiting your further desires in regard to this case, I am,                    Fraternally,
                                   "G. H. SLOCUM."

There is further correspondence claimed to have been carried on between the two attorneys, but the letter of February 3, 1909, from the general secretary was never answered.

On June 16, 1910, the attorney who represented Mrs. Breen during her lifetime wrote the following letter to defendant order:

                    "PORT HURON, MICH., June 16, 1910.
"ANCIENT ORDER OF GLEANERS,
     "Gleaner Temple, Woodward Ave.,
          . "Detroit, Mich.
*"Gentlemen:*
     "It is quite a long while since I submitted the claim of Breen against the Gleaners to your committee for their consideration, and although I have written your Mr. Slocum and other officers of your organization, I have been unable to find what action you have taken upon the matter. Will you kindly advise me what you intend to do?                    Yours truly,
                                   "JOSEPH WALSH."

Which was answered by the general secretary as follows:

                         "DETROIT, MICH.,
                              "July 1, 1910.
"JOSEPH WALSH,
     "Port Huron, Mich.
*"Dear Sir:*
     "Your favor was received at the office during my

absence and has just been presented to me for my consideration. Attorney Wixon, at Caro, certainly must have informed you of the action of the supreme council with reference to the so-called Breen claim. He was informed that the supreme council did not feel that they should assume any liability under this claim, and they refused to settle for $250.00, the amount agreed upon between yourself and Mr. Wixon.

"I would suggest that you write direct to him for any further information you may desire.

"Sincerely yours,
"G. H. SLOCUM."

From the history of this correspondence and the letters themselves which have been given at as great length as the necessities of the case required, must be established the contention of plaintiff that he has been deprived of a hearing on this claim by fraud and oppression practiced on the part of the officers and agents of defendant order.

The petition of Julia Breen was filed August 20, 1906. Its receipt was promptly acknowledged by letter to her attorney, stating why a meeting could not be held until September or October following. With the exception of one letter written soon after the petition was filed, no effort was made on her part or by her attorney to prosecute this claim until one year and one month later, to wit, September 20, 1907. Between the last-mentioned date and the date of her death, which occurred April 4, 1908, but two letters were written by her attorney to the attorney of the order making inquiry relative to a hearing upon this claim, in neither of which is any complaint made because of delay, and in one it appeared that the delay had been caused by this attorney for the purpose of accommodating his friend, the attorney of the order, because he had an election on his hands. We do not find in this correspondence, from the time of filing the petition until the death of claimant, anything whatever to indicate an unwarranted delay caused by de-

fendant or that fraud and oppression were contemplated or practiced by it against Julia Breen. After her death up to the time of the meeting of September 11, 1908, but one letter was written by Mrs. Breen's attorney to the general secretary of defendant requesting that a date be fixed for the hearing "in the matter of *Breen* v. *Gleaners*." This was dated July 16, 1908 (more than three months after her death), and was answered July 24, 1908, to the effect that the date of the meeting when fixed would be given him by the attorney, and on August 3d following the attorney wrote that such meeting would be held soon in Detroit and the exact date would be given.

The meeting called to hear this claim was held September 11, 1908. As far as the record shows, the death of Julia Breen was first made known to defendant order at this meeting when the attorney who ha' always represented her in the matter of her clair stated that he appeared "for the representatives of both said member and said beneficiary, both deceased." This is the meeting of which plaintiff in this suit complains and charges that no proofs were introduced on the part of defendant. The attorney, who had charge of the claim from the time of filing the petition and under whose supervision it had been prepared, knew, as stated in the petition, the reason the defendant order refused to pay the claim, and also that during the lifetime of Maurice Breen, after the order had requested him to furnish proofs of his age, his standing in the order was questioned. He had been consulted about the matter, and as a witness in the instant case testified:

"I knew they attempted to suspend him because he did not furnish the proof of his age.

"*Q.* Do you know of any attempt on the part of Maurice Breen during his lifetime to be reinstated into the order?

"*A.* Why, no, there was no such attempt. I ad-

vised him that he didn't have to be, and that they didn't have any authority to put him out at all."

The following is article 5, § 1, subd. 15, of the constitution of the order:

"(15) The supreme council shall have power to pass upon all death and permanent disability claims, and if in their judgment any such claim is not on its face a valid one, they shall notify the beneficiary or beneficiaries of the deceased member thereof in case of death claim, and the insured member thereof in case of permanent disability loans, and give them or their attorney an opportunity to appear before the supreme council within sixty days thereafter and present such evidence as they may have, to establish the justice of said claim, and the supreme council shall try, hear and decide upon the justness or validity of such claim, and such decision shall be binding and conclusive upon said claimant unless an appeal is taken to the biennial meeting of the supreme arbor. The notice of the appeal from the decision of the supreme council must be filed with the supreme secretary within sixty days thereafter. The decision of the biennial meeting shall in all cases be final, and no suit in law or equity shall be commenced or maintained by any member or beneficiary against the supreme arbor."

Under defendant's constitution such hearings were held for the purpose of giving claimants an opportunity to present such evidence as they might have to establish the justice of their claims. At this hearing this attorney submitted no proofs, as he testified:

"Q. You didn't furnish any proof whatever to the order when the order requested it with reference to the age of Maurice Breen?

"A. Nothing at all. I didn't deem it at all necessary that we should furnish them any proof."

He only made an offer for settlement and left the meeting. This offer of settlement was not accepted. It is apparent from the record that the supreme council held this meeting under subdivision 15 of the constitution, *supra,* and it is also apparent that claimant

made no attempt to establish her claim. Plaintiff in his declaration charges that afterwards, without notice to Julia Breen, or plaintiff, or his attorney, the supreme council met and rejected the entire claim fraudulently and oppressively and without evidence.

` After September 11, 1908, letters passed between the parties. The attorney for Julia Breen wrote two letters to the attorney and one to the general secretary of the order asking for information, which the secretary answered February 3, 1909. This last letter is already given at length, upon reading which we conclude that it contains no evidence of a desire to deprive the attorney of a hearing or to defraud and oppress the claimant. On the contrary, it will bear no such construction. No reply was ever received to this letter, although it called for a reply. Later correspondence before the commencement of this suit does not require consideration as it is not important and has no bearing upon the immediate proposition under consideration.

Our conclusion from all of the evidence in the case upon the question we are considering is that Julia Breen was not by fraud and oppression deprived of her right to be heard upon her claim as beneficiary of Maurice Breen, and that she had not exhausted her remedy in the forum of the order, and that neither during her lifetime nor afterwards is there any evidence of the practice of any fraud or oppression in this matter on the part of defendant order. The facts have been presented and discussed which occurred after the death of Julia Breen for the purpose only as bearing upon the conduct of defendant and its officers charged to have been fraudulent and oppressive in dealing with Julia Breen.

As far as the plaintiff in the instant case is concerned, his right and authority to represent the estate of Julia Breen was created after all the occurrences already recited. Letters of administration were not

issued to him until August 26, 1910. The record is barren of any evidence showing or tending to show that he, or any one in his behalf, has applied to defendant order or taken any steps or proceedings whatever looking toward a hearing before its supreme council, the body authorized to hear, determine, and allow for him, as the representative of the estate of Julia Breen, beneficiary, deceased, this claim against the defendant order, arising upon the certificate issued to Maurice Breen. He must therefore be held not to be entitled to resort to the law courts, on his own showing, not having availed himself of or exhausted his remedy provided by the order.

The circuit court was in error in not granting the motion made on the part of defendant and appellant to direct a verdict in its favor upon that ground.

The judgment of the circuit court is reversed and set aside, and no new trial will be granted.

Steere, C. J., and Moore, Brooke, Kuhn, Stone, Ostrander, and Bird, JJ., concurred.